UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KATHERINE HASECKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:06-CV-82-TS |
| ) | |
| AUTO-OWNERS INSURANCE ) | |
| CO., ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Plaintiff, Katherine Hasecke, filed this lawsuit against Auto-Owners Insurance Company for underinsured motorist (UIM) coverage for injuries she sustained on February 12, 2004, when she was hit by a car while crossing a street in Pennsylvania. The Plaintiff maintains that she is covered under her father's insurance policy by the UIM insuring clause that applies to relatives who reside with the insured. On January 30, 2007, Auto-Owners moved for summary judgment on the basis that, at the time of the accident, the Plaintiff did not reside with her parents in Fort Wayne, Indiana, but lived in Pennsylvania. The Plaintiff argues in her Response, filed on April 13, 2007, that she was living in Pennsylvania on a temporary basis at the time of the accident. She submits that the definition of resides is ambiguous and that a jury should determine whether UIM coverage extended to her as a relative residing with the insured. In its Reply, Auto-Owners maintains that, as a matter of law, the Plaintiff did not reside with her parents under the clear and unambiguous terms of the insurance policy.

**STATEMENT OF FACTS**

Katherine Hasecke was born in Toledo, Ohio, to Frederick and Linda Hasecke on January 15, 1981. The Plaintiff lived with her parents in Toledo until 1999, when they moved to Fort Wayne, Indiana. The Plaintiff moved her belongings to the Fort Wayne home and listed the Fort Wayne address on her driver's license and used it for voter registration. However, the Plaintiff immediately began attending Wittenberg University in Springfield, Ohio, and lived on the campus in Springfield during her four years of college. The Plaintiff majored in early childhood education and intended to become a teacher after graduation.

The summer after she graduated from college the Plaintiff moved from her campus residence to her parents' home in Fort Wayne. She stayed there for about one month. In August 2003, the Plaintiff moved to Pennsylvania along with a girlfriend to try to get a teaching job. Her intent was to get a teaching position so she could live in Pennsylvania invariably. If she did not find a job, she would not be able to afford to stay in Pennsylvania and would have gone "home to Fort Wayne, Indiana." (Pl. Dep. at 85.)[1]

When the Plaintiff moved she took most of her clothes, a bed, a dresser, a couch, towels, a microwave oven, a toaster oven, and an alarm clock. She left some clothes, a bed, a dresser, decorating items, year books, and photo albums at her parents' home. She kept her car, voter registration, and license in Indiana in the event she had to move back to Fort Wayne.

Within three weeks of moving, the Plaintiff had submitted her application to the Philadelphia Public Schools. She did not get a teaching job for that fall, but obtained employment with The Body Shop and the California Café. She paid for health care through her

---

[1] The Plaintiff eventually found a teaching job and stayed in Pennsylvania. However, this did not occur until after the accident that is at issue in this case.

job at the California Café. The Plaintiff signed a lease agreement for a house. She shared the house with two friends, but had her own bedroom. She paid for the house and utilities with her own money. The Plaintiff used a cell phone with a Pennsylvania phone number. She had purchased the phone in Ohio, but requested that it have a Pennsylvania phone number because of her plans to move there. She received all mail, other than college mail, at her Pennsylvania address and gave that address to prospective employers. The Plaintiff listed her Pennsylvania address on her 2003 federal income tax return and Ohio and Indiana income tax returns. She also listed it on her 2004 federal tax return. The Plaintiff became a member of a local gym, took out a Blockbuster video rental card, obtained a public library card, and opened a checking account in Pennsylvania.

After moving to Pennsylvania in August 2003, the Plaintiff flew to Fort Wayne to visit her parents twice—at Thanksgiving and Christmas. Her visit lasted four to five days for Thanksgiving and about a week for Christmas.

On February 12, 2004, about six months after she moved to Pennsylvania, the Plaintiff was hit by a car as she stood on the centerline waiting to cross a street near her residence. The Plaintiff did not return to Fort Wayne to recuperate from her injuries.

The Plaintiff settled her claim against the driver with his insurance company for the policy limits. The Plaintiff sought UIM coverage against Auto-Owners under her parents' policy. On August 4, 2004, an Auto-Owner's field claims representative sent a letter to the Plaintiff's counsel denying coverage because the company's "investigation indicates that your client graduated from college in May 2003 and moved to Pennsylvania in September of 2003 with the intention of living there permanently and finding gainful employment as a school teacher." (DE

3

29-7 at 1.)

Under her parent's policy, UIM coverage that is extended to the insured as a pedestrian also applies to a "relative who does not own an automobile." (DE 20-6 at 15.) Relative is defined in the "Insuring Agreement" as "a person who resides with you and who is related to you by blood, marriage or adoption." (DE 20-6 at 30.) "Resides" is not defined in the policy.

The Plaintiff's father first purchased automobile insurance coverage from Auto-Owners in December 2001, while the Plaintiff was attending college. Mr. Hasecke informed Auto-Owners that his daughter was staying at school in Ohio, but still resided at the Hasecke home and drove the Hasecke vehicles, as she did not own her own car. Auto-owners generally provides UIM coverage to an insured's children who are living away from home while attending college.

The Plaintiff's father provided an affidavit in response to Auto-Owner's Motion for Summary Judgment. He states that while the Plaintiff was in Pennsylvania, he considered her a permanent resident at his home in Fort Wayne, much the same as he did when she was in college.

> 13. After Katherine graduated from college in mid-2003, she maintained the same residency arrangement she had with us while in college. Her future was not certain, and she did not make the decision to permanently reside in Pennsylvania when she traveled there, or when she was staying on a trial basis in 2003 and early 2004, looking for a permanent teaching job.
> 14. We considered Katherine a permanent resident of our home in Fort Wayne from the time we moved to Fort Wayne, until she acquired a permanent job in Pennsylvania in the summer of 2004.

(Aff. Frederick Hasecke, ¶¶ 13, 14.) The Plaintiff's mother states the same thing in her affidavit. (Aff. Linda Hasecke, ¶¶ 8, 9.) Mrs. Hasecke also states that on July 16, 2004, she told an Auto-Owners representative that the Plaintiff had moved to Pennsylvania in September 2003 on a trial basis to look for a teaching job, but had not found one before the accident. The field agents'

4

notes confirm this. She also informed the agent that, after the accident, the Plaintiff found a teaching job for 2004 and was, therefore, planning to stay in Pennsylvania. The Plaintiff currently teaches and resides in Pennsylvania.

When asked in her deposition why she cited Fort Wayne as her address in the Complaint against Auto Owner's, the Plaintiff gave the following explanation:

> Because when I — when I came to Philadelphia that year it was on a very temporary basis. I had just graduated from college. I was looking to do something different with some friends. We decided Philadelphia because it was close to Cara's parents. She was a little bit familiar with the area. We came out here. There are two leases that are available for two, three years. We purposefully decided on a . . . one-year lease, seeing that year really just as a scouting trip, trying it out, seeing if it would work for us.
>
> It worked very well for Cara. She got a full-time job immediately. At the time of the accident it had not worked out so well for me. It was fun. It was a nice place to be, but I had not secured a teaching position for the following year. I had not signed on to another lease. I had no — I didn't even know about the Mt. Vernon place, and I had no intention of staying here if I did not get a teaching job.
>
> I financially couldn't afford it, and I would have gone home to Fort Wayne, Indiana. That's why I kept the car, the voter registration, the license, all of it in Indiana, because that was my home. That's where my parents lived and that's where at the time of the accident looked like I would be heading back to in a few months.

(Pl.'s Dep. at 84–86.)

### DISCUSSION

**A.     Standard of Review**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

5

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.

Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248–50. Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992).

### B.    Definition and Meaning of Residency in Insurance Contracts

The Plaintiff argues that whether the Plaintiff resided with her parents at the time of the accident is a disputed issue of fact that must be determined by a jury. She contends that a reasonable jury could conclude that she was only staying in Pennsylvania on a trial basis in search of long term employment, but had not yet committed to moving there permanently. The Plaintiff points to Auto-Owner's treatment of college students as evidence that the Plaintiff could have still been covered by the policy; it considers them to reside with their parents, even though they do no live in the same house. She also notes that summary judgment is not appropriate on the issue of residency because it is a fact-sensitive inquiry that includes consideration of the Plaintiff's subjective intent.

The Defendant maintains that the word resides is not ambiguous and that the Plaintiff does not fall within the coverage for relatives residing with the insured. The Defendant argues

that Mr. and Mrs. Hasecke's Affidavits revealing their subjective opinions about the nature of the Plaintiff's move and her intent are not relevant evidence. Auto-Owners states that its treatment of college students is also not relevant. Auto-Owners concludes that the dispute over the Plaintiff's residence is so one-sided that it must prevail as a matter of law.

**1.**     *Insurance Contract Interpretation*

The parties do not dispute that Indiana law governs the interpretation of the insurance contract. *See Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir. 1993). Insurance contracts are subject to the same rules of construction as other contracts: The goal is to ascertain and enforce the parties' intent as revealed by the insurance contract. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004). In accomplishing that goal, a court must construe the insurance policy as a whole. *Id.* If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* "An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Barclay v. State Auto Ins. Cos.*, 816 N.E.2d 973, 975 (Ind. Ct. App. 2004) (citations and quotation marks omitted).

The Plaintiff submits that the policy does not define what it means to reside with the insured and Auto-Owners has not provided any clear guidance as to what the word means for purposes of its UIM coverage. The Plaintiff contends that the term is ambiguous and should be construed broadly to extend coverage and a jury allowed to consider the fact-sensitive criteria that determine residence. The Defendant notes that the term reside has been addressed by

Indiana Courts and never been held to be an ambiguous term.

The Court agrees with the Defendant. In *Jones v. Western Reserve Group/Lightning Rod Mutual Insurance Co.*, 699 N.E.2d 711 (Ind. Ct. App. 1998), the court found that the term "resident," as used in an insurance policy was not ambiguous on its face. However, because the term was not defined by the parties in the contract, the court was required to "apply the common law of Indiana to flesh out its meaning." *Id.* at 714; *see also Ind. Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 304 (Ind. Ct. App. 2004) (stating that term resident was not ambiguous but because parties left it undefined the court had to apply Indiana common law to determine its meaning); *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 289 (Ind. Ct. App. 2003) (finding that a jury was not required to be instructed on the term "resident" as used in an insurance policy because the meaning of the term was "unambiguous and well understood by the average juror").

Here, the word "resides" in Auto-Owner's policy is likewise not ambiguous. However, neither is it defined. And so, the Court must turn to the common law to determine whether a genuine issue of material fact exists on the issue of the Plaintiff's residency. The Seventh Circuit, applying Indiana's residency law, has stated that summary judgment in favor of the defendant insurance company is appropriate "when the evidence presented to the district court is not sufficient to permit a jury, applying Indiana law, to conclude that [the plaintiff] was a resident" under the insurance policy at the time of the accident. *Alexander*, 982 F.2d at 1160. Thus, the question before this Court is whether the evidence submitted by the Plaintiff is sufficient to permit a jury to determine that she resided with her father at the time of the accident.

9

**2.     *Definition of Resident Under Indiana Law***

The term residence has no fixed or precise meaning in Indiana law and is dependent on a variety of factors. *Johnson v. Payne*, 549 N.E.2d 48, 50 (Ind. Ct. App. 1990).

> In determining one's residency status under an auto liability insurance contract, Indiana courts consider the following factors: (1) whether the claimant maintained a physical presence in the named insured's home; (2) whether she possessed the subjective intent to reside therein; and (3) the nature of her access to the named insured's home and its contents. In addition, the fact finder must consider all of the evidence indicative of the claimant's living habits. These factors should be considered in the context in which the term "resident" is used and the purpose of the instrument in which the term is employed.

*Jones*, 699 N.E.2d at 714–15 (footnotes and citations omitted). A person may have more than one residence. *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 593 (Ind. Ct. App. 1982).

Applying the factors set forth above, the court in *Jones v. Western Reserve Group/Lightning Rod Mutual Insurance Co.*, found that the plaintiff's residency was a question of fact for a jury because the evidence reasonably created conflicting inferences concerning Jones' residency status under an automobile insurance policy. 699 N.E.2d at 712. In *Jones*, the plaintiff contemplated quitting high school during her sophomore year after classmates spread rumors about her. To encourage the plaintiff to complete high school, her parents allowed her to move to another city to live with an aunt. She brought some clothes and personal items with her, but left others. When she moved out, her younger brother began sleeping in her bedroom.

So that she could enroll at a new school, her parents and her aunt executed a custody statement claiming that the plaintiff lived at her aunt's address. The plaintiff did not have her own room at her aunt's house, but slept on a mattress with her aunt's ten-year-old daughter or on the couch. Her parents helped pay for groceries, rent, and other items. The plaintiff visited her

parents some weekends, holidays, her birthday, and a couple weeks when they were vacationing in the summer.

After her sophomore year, the plaintiff moved into an efficiency apartment so as not to burden her aunt. She also stated that she wanted to try to make it on her own. The plaintiff's parents assisted her with rent payments and helped furnish the apartment. The plaintiff had a job but lost it three months later and had to move out of the apartment. This time, she moved to another aunt's house who lived in the same town. She stayed there about seven months and, during the spring of her junior year, moved into a second apartment with two high school friends. Less than two months later she was involved in a car accident as a passenger. She returned home to recover from her injuries and re-enrolled in the school she attended while living with her parents.

In reversing the trial court's entry of summary judgment for the defendant insurance company, the court stated that the facts appeared to weigh against the plaintiff being found a resident of her parents' home, but that "reasonable persons could draw a contrary interpretation." 699 N.E.2d at 716. As an example, the court stated that "one could reasonably conclude that Jones' attempt to move to her own apartment was merely a failed experience in independence, not the manifestation of her intent to permanently leave [her parent'] home." *Id.* The court also emphasized that the plaintiff could possess more than one residence. *Id.*

In *Indiana Farmers Mutual Insurance Group v. Blaskie*, 727 N.E.2d 13 (Ind. Ct. App. 2000), the appellate court relied on the factors cited in *Jones*, but ruled in favor of the insurance company defendant. The appellate court ordered the trial court to enter summary judgment in favor of the insurance company on the issue of residence. The person whose residence was at

issue in *Blaskie* was a thirty-seven-year-old named Lynn Miller, who was the driver of the car that collided with Todd Blaskie's car in 1994. Miller had married shortly after graduating from high school in 1981 but later divorced. Miller joined the Navy in 1985 and was stationed in California. He was still in the Navy at the time of the accident.

Miller returned to Indiana when he was on leave—about once every sixteen months. He either stayed with his parents or with other relatives. The lengths of his visits varied, ranging from about ten days to about four weeks. Miller's parents welcomed him in their home, but did not consider him to be a resident. When Miller stayed with his parents, he kept his clothing in a duffel bag on the porch and slept on the couch. He did not receive mail at his parent's house or pay rent. While Miller did not have a key to the house, he could come and go as he pleased because it was not locked and he had access to his parents' car. On the day of the accident, he was visiting his parents in Indiana to attend his grandfather's funeral and had borrowed his father's car.

Addressing the physical presence factor, the court stated that Miller's absence from his parents' home could hardly be characterized a "failed experiment in independence" as it was in *Jones*. 727 N.E.2d at 16. In addition, his presence at his parents' home was minimal; he had been living away from the home for thirteen years and visited infrequently. *Id.* The court held that the facts suggested that Miller's status when he was in his parents' home "was that of a temporary visitor rather than that of a resident, as he stored his personal items on the porch, slept on a couch, and did not have a room of his own." *Id.*

The court next addressed the subjective intent of the parties and noted that both Miller and his parents testified that he was not a resident of their home and that nothing in the record

12

contradicted those statements of intent. 727 N.E.2d at 17.

The final factor, access to the policyholder's home and its contents, also supported summary judgment for the insurance company defendant when viewed in light of the other evidence presented in the case. While Miller was free to come and go as he pleased when he visited his parents and was permitted to drive their car, these were the same privileges that other welcome house guests enjoyed. *Id.* at 18.

Before having the benefit of the state appellate decision in *Jones* or *Blaskie*, the Seventh Circuit used similar criteria it derived from previous Indiana cases to determine whether the plaintiff resided with the insured under the provisions of an automobile insurance policy in *Alexander v. Erie Insurance Exchange*, 982 F.2d 1153 (7th Cir. 1993):

> (1) physical presence (intending to have a fixed abode for the time being, to dwell under the same roof and compose a family); (2) the unrestricted access to the insured's home and its contents; (3) the intent of the contracting parties to provide coverage; and (4) the totality of the evidence.

*Id.* at 1159. The court emphasized that these factors were "conceptually and practically inter-related." *Id.* The court then considered these factors in light of the facts of the case.

> At the time of the accident, Seifert was living with his father in Pennsylvania. Seifert was under twenty-one years of age and, with the exception of the five months immediately prior to the accident, he had always lived with his mother in Indiana. After the accident, Seifert continued living with his father in Pennsylvania for two months. He then returned to live with his mother in Indiana. Seifert claims that he had always intended the stay with his father to be temporary. Seifert's federal and state income tax forms for the year 1985, which he filed in February 1986 after he moved back to his mother's home, claimed his residence as his mother's house in Carmel, Indiana. He notes that, during the time he lived with his father, he retained complete access to his mother's home and stayed in frequent contact with her. He visited Indiana only once during the five-month period. Additionally, Seifert had a full-time job and obtained a Pennsylvania driver's license while living with his father.

*Id.* at 1155 (footnote omitted).

13

On the basis of these facts, the court determined that no genuine issues of triable fact precluded summary judgment for the insurance company and the claimant did not reside with his mother. First, it was not disputed that the child was not "present under his mother's roof so as to manifest the intent to compose a single family unit." *Id.* at 1159. He lived with his father. Nor did the plaintiff have the "sort of unrestricted access to his mother's home that is contemplated by the Indiana cases." *Id.* at 1159. The court stated that the question of access must be assessed in relation to the overall living arrangement of the parties.

> Many close relations and, indeed, close friends would no doubt consider that they would have "unlimited access" to the home of each other if the need arose. However, circumstances may make it quite clear that there is no such present need because of the activities of the individuals. In such a situation, it is not reasonable to conclude that the parties contemplate that their abstract "welcome" amounts to an agreement to insure the vehicular activity of the other person.

*Id.* at 1159–60. The court did not specifically address the issue of the claimant's subjective intent, other than to note that it is a factor in determining residency and that "summary judgment ought to be used sparingly and with great caution in cases such as this one where subjective intent is a factor in the determination." *Id.* at 1160.

The above-cited cases demonstrate that summary judgment may be appropriate in cases where residency is at issue despite employment of a fact-sensitive inquiry. However, these cases also suggest that summary judgment is not appropriate in this case. The Plaintiff's absence from her parents' home, the arrangements when she visited there, and her subjective intent do not compel summary judgment for Auto-Owners. The evidence in this case falls somewhere between the infrequent visits of the thirty-seven-year-old military son in *Blaskie* who expressed no intent to reside with his parents and the high school student relying significantly on her parents' support in *Jones*. And although *Alexander* (upon which Auto-Owners relies heavily) appears to

14

present a living arrangements closer to the Plaintiff's, there is no analysis in that case regarding the claimant's subjective intent, one of the factors that Indiana courts consider when determining residency—and the factor that the Plaintiff argues forecloses summary judgment in this case. The Court finds that this evidence of subjective intent, in light of all the totality of the circumstances of this case, creates a genuine issue of material fact whether the Plaintiff resided with her parents at the time of the accident.

**C.     The Plaintiff's Residence**

Keeping in mind that the factors for determining residency are conceptually interrelated and that all the evidence indicative of the plaintiff's living habits is relevant, the Court will discuss each factor in turn.

**1.     *Physical Presence***

It is not disputed that the Plaintiff was not present, on a regular basis, in her parents' home. The house she lived in was located in Pennsylvania and she spent most of her time there. Even when she was recovering from her accident, the Plaintiff did not go to her parents' home. Her visits were limited to major holidays and the longest, at Christmas, lasted about a week. However, during these visits, she stayed in her own furnished room. This room also contained her picture albums and decorating items as well as some clothing. Neither party indicates whether her room was also used for other overnight visitors. In addition, the only other time the Plaintiff had not maintained a regular presence in her parents' home was while she attended college and she had just graduated that spring.

While the Plaintiff's day to day activities took place in Pennsylvania, she maintained some presence in her parents' Fort Wayne home. This presence is somewhat minimal and, in isolation, does not tend to support the conclusion that the Plaintiff resided with the insured. But when this factor is considered in conjunction with the Plaintiff's subjective intent, the Court cannot say, as a matter of law, that the Plaintiff did not reside with her parents.

**2.**     *The Plaintiff's Intent*

The Plaintiff and her parents refer to the Pennsylvania move as a trial-basis move.[2] The Defendant argues that it was the Plaintiff's full intent and desire, when she moved to Pennsylvania, to remain there permanently. These two positions are not necessarily at odds. The totality of the Plaintiff's living habits indicate that even though the Plaintiff desired to live in Pennsylvania permanently, she realized the possibility that if she did not get a teaching job she would be forced to move back to Fort Wayne for financial reasons.

Crediting her deposition testimony that she "had no intention of staying [in Pennsylvania] if [she] did not get a teaching job," the Court finds that a reasonable jury could conclude that she still considered herself a resident of her parent's home at the time of the accident. She had not secured a teaching position by this time and her future, as she describes it, seemed uncertain. She

---

[2] The Defendant submits that the statements contained in Mr. and Mrs. Hasecke's affidavits are not relevant to the Plaintiff's subjective intent and are conclusory and self-serving. The Court finds that the Haseckes' statements about their own beliefs, and conduct as it related to these beliefs, are relevant and admissible. In *Blaskie*, the court stated that both Miller and his parents testified "as to their subjective belief that [he] was not a resident" of the Miller's home. 727 N.E.2d at 17; *cf. Aetna Cas. & Sur. Co. v. Crafton*, 551 N.E.2d 893, 896 (Ind. Ct. App. 1990) (discussing lack of evidence to support an inference that the claimant's mother desired to provide coverage to her son).

had not signed a new lease and thought she might be returning to Fort Wayne.[3] She kept the documents that are more indicative of permanent residency—her driver's license, car registration, and voter registration—in Fort Wayne in the event she moved back home. She also had a fully furnished bedroom at her parents' home. Moreover, none of the evidence conclusively forecloses a finding that her move was only temporary until she secured the teaching position. Movie rental agreements, library cards, gym memberships, cell phone numbers, and checking accounts are easily cancelled or changed. She did not make frequent visits to Fort Wayne, but such visits would have been cost and time prohibitive given the distance. Giving prospective employers her Pennsylvania address was consistent with her attempts to secure a full-time, permanent teaching job, which the Plaintiff admits was her ultimate goal. Taking other jobs and staying in Pennsylvania for a reasonable amount of time could also be considered the course of action most likely to help the Plaintiff accomplish this goal.

A reasonable jury could conclude that the Plaintiff's move to Pennsylvania was not a manifestation of her intent to permanently leave her parents' home as much as it was an experiment in independent living, albeit with the hope (as most those who experiment in such a manner would possess) that her contingent move would become permanent. Without the stability of a teaching job, the Plaintiff maintained her residence with her parents as a safety net.

---

[3] The Plaintiff states in her deposition that, at the time of the accident, it looked like she would be heading back to Fort Wayne "in a few months." (Pl.'s Dep. at 86.) The fact that the Plaintiff does not explain what circumstances would have changed to cause her to move a few months from February, and six months after her initial move—as opposed to some earlier or later date in her trial period—may go to the weight of the evidence or to the Plaintiff's credibility. Neither is appropriate for the Court on a motion for summary judgment.

3.      *Unrestricted Access*

The Plaintiff presumably had some kind of access to her parent's home when she visited there, perhaps even unlimited access. However, the record does not indicate what level of access she enjoyed. For example, there is no evidence that she had a house key or a garage door opener. Nevertheless, the lack of evidence for this factor does not necessitate summary judgment for Auto-Owner's because the Plaintiff has presented sufficient evidence to create a genuine issue of material fact that she intended to reside with her parents up until the time she received a full-time teaching job. It is for a jury to weigh the evidence and decide whether the totality of the Plaintiff's living habits supports the conclusion that she was a resident of her father's home.

Because the undisputed facts do not make the outcome clear, the Defendant's Motion for Summary Judgment is denied.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 20] is DENIED. A telephonic status conference is scheduled for Thursday, August 2, 2007, at 2:30 PM before Judge Theresa L. Springmann. The Court will initiate the call.

SO ORDERED on July 19, 2007.

                                           s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT